## CITY COUNCIL OF AUGUSTA *v*. LITTLE.

1. A municipal corporation is not liable for personal injuries resulting from an error in a plan, adopted in pursuance of its legislative power, for the grading and constructing of its sidewalks.
2. By the act of 1892, the city engineer of Augusta has full authority to determine, as a legislative or judicial act, upon the grade and plan of construction of the sidewalks of the city.
3. Where in a suit against the city for injuries no fault is shown except that the plan and grade adopted by the city engineer was an erroneous one, and the evidence as to that is in conflict, a verdict finding the city liable is contrary to law.

Submitted March 1, — Decided April 2, 1902.

Action for damages. Before Judge Eve. City court of Richmond county. August 6, 1901.

*W. H. Barrett*, for plaintiff in error, cited, on the questions dealt with in the decision: Political Code, § 748; 66 *Ga.* 83 (2); 43 Am. Rep. 91, note; Acts 1892, p. 197; 66 *Ga.* 304; 118 U. S. 19; 1 Mun. Corp. Cas. 77; 3 Id. 144; 15 Am. & Eng. Enc. L. (2d ed.) 428; Elliott, Roads and Streets (2d ed.), §§ 474, 473, n.; Elliott, Mun. Corp. § 340, and note; Tiedeman, Mun. Corp. § 350; 1 Shearm. & Redf. Neg. § 278; Williams, Mun. Torts, § 91; 103 Ind. 314; 42 Iowa, 308, s. c. 20 Am. Rep. 622; 32 Kan. 485, s. c. 5 Am. & Eng. Corp. Cas. 595.

*P. J. Sullivan*, contra, cited: 60 *Ga.* 476; 107 *Ga.* 349; 1 Dill. Mun. Corp. (4th ed.) §§ 96, 97; 20 L. R. A. 653; 15 Am. & Eng. Enc. L. (1st ed.) 1148.

SIMMONS, C. J. Suit was brought against the City Council of Augusta by Mrs. Little, for the homicide of her husband, which, she alleged, was occasioned by a defect in a sidewalk within the corporate limits. This defect was in having the sidewalk about level from the buildings thereon to within 29 inches of the asphalt street paving, where the sidewalk sloped or had a fall of 29 degrees to the curb which joins it with the asphalt paving. Upon this sloping portion of the sidewalk plaintiff's husband, an old man, slipped and fell, thereby receiving injuries from which he died. The city denied liability, and set up as part of its defense that fixing the grade of the sidewalk was a judicial act, and that the city was not liable for an error in judgment in fixing the grade. On the trial of the case evidence was introduced which tended to show that the grade was

too steep and that the place was dangerous, one witness having in the course of several years seen three or four persons fall at this place. The defendant introduced evidence to the effect that the place was not dangerous, one witness testifying that he had for several years occupied a store near by and had never seen any one fall on account of the declivity. A witness who had been city engineer at the time the grade was established and the sidewalk built testified that the grade was safe and proper, and that the sidewalk was constructed in accordance with the general plans adopted for sidewalks in other places of similar character in the city; that, after considering several methods of fixing such places, this was adopted as best. He further testified that the same method had been adopted in other cities. The jury returned a verdict for the plaintiff. The defendant made a motion for a new trial, and, when it was overruled, excepted.

The main and controlling question in the case is whether the city was liable to the plaintiff after it had been shown that the grade under consideration had been established under the direction and authority of the city authorities. It is now settled in this State that, where the legislature delegates governmental authority to a municipal corporation, the municipality is not liable to private individuals for any error in performing legislative or judicial powers. The adoption by a municipal corporation of a plan for grading the streets and sidewalks of a city is a quasi-judicial act, and, if the plan adopted be erroneous, the city can not be held liable to a private person who is injured thereby. If the execution of this plan — the construction of the pavement — be unskillful or negligent, the city would be liable; for the construction would be a ministerial duty. In the present case there is no evidence that the city council had adopted or ratified the grade on this part of the sidewalk. The legislature, however, in 1892 passed an act which deprived the city council of the power to do this, and conferred it on the city engineer. Under the provisions of this act, that officer seems to have all the power, in reference to the establishment of a grade and the paving of sidewalks, usually conferred on the city council. The act makes him the judge in such matters, instead of the council. In other words, it confers upon him the judicial power to decide upon the grades of the sidewalks. Under the act he stands, as regards this matter, in the place of the council. When he decides

upon the grade of the pavement of a sidewalk, it is just as much a judicial act as though the decision had been made by the council. The grade of this particular sidewalk was, subsequently to the passage of this act, fixed by the city engineer. If he faithfully exercised the deliberation and discretion necessarily involved, his determination is not subject to review by courts of law in a private action brought by one alleged to have been injured thereby. Political Code, § 748; Tiedeman, Mun. Corp. § 328 et seq.; *Fuller* v. *Atlanta,* 66 *Ga.* 83. Some courts have held a municipal corporation liable where it is negligent in selecting a plan, in that incompetent persons are employed for that purpose. 15 Am. & Eng. Enc. Law, 1149, n.; 1 Mun. Corp. Cas. 77, n. Even if we considered these decisions sound, they would not be applicable here; for there was no evidence whatever that the city engineer, by whom the plan of the sidewalk was adopted, was incompetent. The evidence showed that he was a civil engineer and had for more than twenty years superintended the construction of practically all the sidewalks laid in Augusta. He thus appears to have been thoroughly competent. Indeed there was evidence of other engineers and of other persons that the plan adopted was a good and a safe one.

We think the act of 1892 conferred upon the city engineer the judicial power and discretion usually conferred upon the municipal council. No reason occurs to us why the legislature can not appoint a judicial officer to determine these questions and make his decision as binding as, under similar circumstances, the decision of the city council would be. Indeed it appears from the act that the action of the legislature was taken at the request of the city council and in adoption of certain ordinances passed by that council. Nor do we think the verdict can be upheld on the ground that the city maintained a dangerous place in the sidewalk after the lapse of a sufficient length of time for it to have ascertained that the place was dangerous. As before remarked, there is a conflict in the evidence as to whether the place is dangerous. Several engineers who testified for the plaintiff did not say in broad terms that the place was dangerous, but qualified their testimony by saying that it was dangerous for a man seventy-four years old (the age of the plaintiff's husband at the time of his death). Moreover, it appears that the grade had been established six or seven years before the trial, and, so far as appears from the evidence, no one was

ever seriously hurt, before Little fell, because of this declivity in the sidewalk. The evidence does not show that during these six or seven years more than six or seven persons fell at this place, and a number of witnesses, who lived or worked near by, testified that of the thousands of persons who passed there they had never seen one fall. One witness especially, whose store was adjoining the sidewalk in question, testified that he had done business in that store for fourteen years and had never seen a single person fall. Besides there was no evidence in the record that there was any negligence in constructing the sidewalk. There was no evidence of any irregularity in putting down the material, of any holes or breaks therein or of any want of repair. One witness testified from a photograph exhibited at the trial that it appeared that some few bricks were raised above the others, but there was no evidence that this was true at the time the plaintiff's husband fell or that his fall was occasioned by any such defect in the sidewalk. For these reasons we think there was not enough to show that the city authorities had notice that the place was actually dangerous. Upon the whole case, we are of opinion that the jury's verdict was contrary to law and the evidence.

*Judgment reversed. All the Justices concurring, except Little and Lewis, JJ., absent.*